IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-343-D

| | | |
|---|---|---|
| THEODORE JUSTICE, for SON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DR. TIMOTHY FARLEY, Granville County School Superintendent, MARY WATSON, Director Exceptional Children, AUGUSTUS B. ELKINS, Administrative Law Judge, HONORABLE JULIAN B. MANN, III, Administrative Law Judge, AMY MILLER, Program Director Exceptional Children, MICHAEL ALLEN, Director Exceptional Children, KATHY TWISDALE, Principal Stovall Shaw Elementary, ROBYNN WILLIAMS, Special Education Teacher, JAMES E. CROSS, JR., Attorney Granville County Schools, DALE W. HENSLEY, Attorney Granville County Schools, KATE NEALE, Consultant for Dispute Resolution Department of Public Instruction Exceptional Children Division, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

On May 10, 2013, Theodore Justice ("Justice" or "plaintiff"), proceeding pro se, filed this action and paid the filing fee [D.E. 1].[1] To the extent Justice seeks to litigate any claim on behalf

---

[1] Justice is no stranger to this court, having filed eleven actions in thirteen years. On May 17, 2012, Senior United States District Judge W. Earl Britt dismissed with prejudice four of Justice's actions pursuant to 28 U.S.C. § 1915(e)(2)(A) as a sanction for Justice's attempt "to mislead and defraud the court as to [his] poverty status." Justice v. Granville Cnty. Bd. of Educ., No. 5:10-CV-539-BR, [D.E. 69] 11 (E.D.N.C. May 17, 2012) (unpublished), aff'd, No. 12-1669 (4th Cir. Oct. 1, 2012) (per curiam) (unpublished); Justice v. Farley, No. 5:11-CV-99-BR, [D.E. 81] (E.D.N.C. May 17, 2012) (unpublished), aff'd, No. 12-1672 (4th Cir. Oct. 1, 2012) (per curiam) (unpublished); Justice v. Farley, No. 5:11-CV-400-BR, [D.E. 49] (E.D.N.C. May 17, 2012) (unpublished), aff'd, No. 12-1673 (4th Cir. Oct. 1, 2012) (per curiam) (unpublished); Justice v. Farley, No. 5:11-CV-706-

of his minor child, he has not received court approval. Moreover, although a parent may initiate an action in North Carolina on behalf of a minor, the parent can do so only with court approval. See, e.g., Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 285–86 (4th Cir. 1979). Justice has not sought or received such court approval and cannot litigate on behalf of his child pro se. See Myers v. Loudoun Cnty. Pub. Sch., 418 F.3d 395, 400 (4th Cir. 2005); see also Reale v. Wake Cnty. Human Servs., 480 F. App'x 195, 197 (4th Cir. 2012) (per curiam) (unpublished).

Justice names as defendants various individuals connected with the Granville County School System (defendants Farley, Miller, Allen, Twisdale, Williams, Cross, and Hensley) (collectively, "the school defendants"); two individuals connected with the Department of Public Instruction (defendants Neale and Watson) (collectively, "the DPI defendants"); and two Administrative Law Judges with the North Carolina Office of Administrative Hearings (defendants Mann and Elkins) (collectively, "the ALJ defendants"). Justice's complaint asserts violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 42 U.S.C. §§ 1983 and 1985(2), and the Constitution of the United States, and seeks injunctive and declaratory relief, in addition to compensatory and punitive damages and attorney's fees. Compl. [D.E. 1] 8–11. On June 27 and July 3, 2013, the DPI and ALJ defendants moved to dismiss the complaint [D.E. 37, 39, 43]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Justice about the motions to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 41, 45]. Justice timely responded in opposition to the motions [D.E. 42, 46].

---

BR, [D.E. 60] (E.D.N.C. May 17, 2012) (unpublished), aff'd, No. 12-1678 (4th Cir. Oct. 1, 2012) (per curiam) (unpublished). Justice must now submit a copy of that order with any IFP application that he files in this district.

2

On July 19, 2013, the clerk of court denied as premature Justice's motion for entry of default against the ALJ defendants [D.E. 48]. On July 29, 2013, Justice moved to amend his complaint "to include Julie A. Richards Clerk of Court" and add claims against the ALJ and DPI defendants [D.E. 49]. On August 9, 2013, all defendants except Richards moved to dismiss [D.E. 50, 52, 54, 57]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Justice about the motions to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 59]. On August 13, 2013, the school defendants filed a second motion to dismiss [D.E. 60]. On August 15, 2013, Justice responded in opposition to all motions [D.E. 62]. On August 21, 2013, Justice filed a supplemental response [D.E. 63]. On September 5, 2013, Justice filed a "motion to resolve issues insufficient service of process" [D.E. 64]. On September 24, 2013, Justice filed a motion to recover costs pursuant to Federal Rule of Civil Procedure 4 [D.E. 65], to which the ALJ defendants responded in opposition [D.E. 67]. On October 4, 2013, Justice filed a personal affidavit [D.E. 66], together with the affidavit of Mary Odom [D.E. 66-2] and other exhibits [D.E. 66-1]. On November 1, 2013, Justice filed a motion for extension of time to effect service [D.E. 71]. On November 21 and December 3, 2013, defendants filed motions to stay discovery [D.E. 74, 77], to which Justice responded in opposition [D.E. 75, 79]. On December 2, 2013, Justice moved for entry of default as to Richards [D.E. 76]. As explained below, the court grants in part and denies in part the pending motions and dismisses the complaint and amended complaint.

I.

Justice alleges that on March 21, 2012, defendant Twisdale, the school principal at Stovall-Shaw Elementary School, refused to reenroll Justice's son without first meeting with defendant Miller, the school's Exceptional Children Director. Compl. 4. Miller "determined that . . . . [t]here had to be an [Individualized Education Program ("IEP")] meeting prior to enrollment."

3

Id. However, the school attorney "intervened and wrote a letter stating the . . . child was permitted to be enrolled," which "infuriated" defendants Miller, Twisdale, and Williams and "made the transition as difficult as possible." Id.

On April 12, 2012, Justice attended an IEP meeting. Compl. 5. Before the meeting, Justice requested a mediator from the North Carolina Department of Public Instruction ("DPI"), but defendant Neale denied the request. Id. Justice asserts that the IEP which resulted from the meeting was "prewritten, pre-determined and [defendant Hensley] was not on the invitation notice . . . and was illegitimately present"; "other members of the meeting would not agree to make any changes to the pre-written IEP"; and that defendant Williams, "author of the pre-written IEP . . . was excused during the meeting," which "ruined . . . any negotiations." Id. On May 23, 2012, Justice filed a contested case in the North Carolina Office of Administrative Hearings ("OAH"), and "a resolution meeting was scheduled for June 18, 2012." Id.

On July 2, 2012, Justice attended another IEP meeting. Compl. 6. Justice alleges that at the meeting, defendant Allen "demanded Plaintiff sign a withdrawal of the [OAH] petition or no IEP meeting would be held." Id. Justice "did sign the form to withdraw in good faith, so the meeting would proceed," but "[n]o agreement was reached" and Justice "attempted to re-instate the petition." Id. Justice alleges that defendants "Elkins and Mann conspiring with [other] [d]efendants closed the matter by court order post dated July 3, 2012 and obstructed telephonic hearings or conferences, filing, [or] refilling (sic) of any petitions." Id. Justice did not file any appeal of the closing of the petition, and did not file any new petition. Hausen Aff. [D.E. 43-4] ¶ 5. Justice's child is now "enroll[ed] in a Charter School" where he "has . . . made extraordinary verifiable progress almost three grade levels in eight months." Compl. 7.

Justice seeks to amend his complaint "to include Defendant Julie A. Richards Clerk of the Court United States District Court Eastern District of North Carolina," based on Richards's alleged refusal to accept filings, denial of his motion for entry of default, "policy to send documents to Wilmington Courthouse," "failure to properly align filing and issuing summons," and "conspiring to discriminate against Plaintiff" with defendants Elkins, Mann, Neal, and Watson. See Prop. Am. Compl. [D.E. 49-1] 3, 5–10.

## II.

### A.

First, the court addresses Justice's motion to amend [D.E. 49]. A party may amend his pleading once as a matter of course within 21 days after service, or, if it is a pleading requiring a response, within 21 days after service of the response or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. See Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend his pleading only with the written consent of the opposing party or by leave of court. Fed. R. Civ. P. 15(a)(2). The court permits the amendment, but dismisses the claims and motions concerning Richards.

"[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid." Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (unpublished) (citing Mallard v. U.S. Dist. Court, 490 U.S. 296, 307–08 (1989)); see Goodwin v. Castille, 465 F. App'x 157, 163 (3d Cir. 2012) (per curiam) (unpublished); Webster v. Penzetta, 458 F. App'x 23, 25 (2d Cir. 2012), as amended (Jan. 24, 2012) (per curiam) (unpublished); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363–64 (2d Cir. 2000) (per curiam). "In addition, because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." Ross, 493 F. App'x at 406.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Additionally, a federal court first must determine whether it has subject-matter jurisdiction. See, e.g., Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Justice, as the party asserting subject-matter jurisdiction, must prove that it exists. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103–04 (1988); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering the issue of subject-matter jurisdiction, the court must determine whether the complaint contains a colorable federal claim. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 514 (2006).

Generally, a case can be originally filed in a federal district court if there is "federal question" jurisdiction under 28 U.S.C. § 1331 or "diversity of citizenship" under 28 U.S.C. § 1332. There is no presumption that a federal court has jurisdiction over a case. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005); Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, "the burden is on the party asserting the jurisdiction of the court to show that jurisdiction does, in fact, exist." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (quotation omitted). Moreover, "[i]t is not sufficient to obtain jurisdiction . . . to merely assert a

6

Case 5:13-cv-00343-D   Document 81   Filed 01/21/14   Page 6 of 17

constitutional violation." Id. If the complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." Pinkley, Inc., 191 F.3d at 399.

Justice's claims against Richards arise out of her actions in her capacity as clerk of court, including her ruling on his motion for entry of default. See [D.E. 49-1] 3–9. However, quasi-judicial immunity protects Richards from suit. See Briscoe v. LaHue, 460 U.S. 325, 335 (1983); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002); Wiley v. Buncombe Cnty., 846 F. Supp. 2d 480, 485 (W.D.N.C.), aff'd, 474 F. App'x 285, 286 (4th Cir. 2012) (per curiam) (unpublished). To the extent Justice disagrees with Richards's determination that he was not entitled to entry of default, the proper recourse for a party who believes that a court has ruled improperly or unfairly is to raise such errors on direct appeal. See, e.g., Pierson v. Ray, 386 U.S. 547, 554 (1967), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). To the extent Justice seeks to assert a claim against Richards for not immediately issuing summonses upon the filing of his complaint, the court also dismisses that claim. See Ross, 493 F. App'x at n.*.[2] The court also dismisses Justice's motion for entry of default against Richards [D.E. 76] and dismisses Richards from this case.

B.

Next, the court addresses the ALJ defendants' argument that Justice has failed to effect proper service of the complaint and summons upon them. ALJ Defts.' Mot. Dismiss [D.E. 43] 2. Justice contends that he properly served all defendants, but requests an extension of time to complete

---

[2] Justice presented proposed summonses to the clerk on May 10, 2013, when he filed his complaint in person at the Wilmington courthouse [D.E. 1-2]; see also [D.E. 5]. On May 17, 2013, a deputy clerk in Raleigh issued the summonses and mailed them to Justice [D.E. 3–4].

7

service if the court determines that service is improper as to these defendants [D.E. 64, 71]. Proper service of process (or waiver of service under Rule 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999); Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998). Once service has been contested, the plaintiff must establish the validity of service pursuant to Rule 4. See, e.g., Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 773 (E.D.N.C. 2011); O'Meara v. Waters, 464 F. Supp. 2d 474, 476 (D. Md. 2006). Because the ALJ defendants did not waive or consent to service, Justice must prove that he validly served these defendants.

Federal Rule of Civil Procedure 4 details the means of properly effecting service of a summons and complaint. If service is not perfected within 120 days of filing the complaint, the court must dismiss the action without prejudice unless plaintiff shows good cause for the failure to properly serve. Fed. R. Civ. P. 4(m). Where a plaintiff seeks to serve an officer of a state agency, Rule 4(j)(2) permits service by "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons." Under North Carolina law, Justice may serve a state agency by properly serving "the process agent appointed by the agency." N.C. Gen. Stat. § 1A-1, Rule 4(j)(4); see Mack v. Fox, No. 1:07CV760, 2008 WL 4832995, at *3 (M.D.N.C. Nov. 4, 2008) (unpublished), report and recommendation adopted, 2008 WL 7674789 (M.D.N.C. Dec. 10, 2008) (unpublished).

The ALJ defendants have produced the following evidence relating to service on them. On May 14, 2013, an individual at the Mail Service Center for the State of North Carolina stamped as received certified mail receipts for the ALJ defendants. Elkins Aff. [D.E. 43-1] ¶ 3 & Ex. A; Mann Aff. [D.E. 43-2] ¶ 3 & Ex. A; Cella Aff. [D.E. 43-3] ¶ 3 & Ex. A. The envelopes addressed to the ALJ defendants contained an "unissued summons form and the complaint." Elkins Aff. ¶ 3; Mann

8

Aff. ¶ 3. It appears that Justice personally placed the unissued summonses and complaints in the mail. See Pl.'s Mot. Recover Costs [D.E. 65] 3 ("Plaintiff due to necessity and urgency mailed the unsigned non stamped summons and complaint that bore the received time stamped May 10, 2013 on the civil cover sheet as well as the complaint by certified return receipt...."). Neither Elkins nor Mann has "[]ever given permission for any Mail Service Center employee to accept service of process or certified mail on [his] behalf as a private individual." Elkins Aff. ¶ 5; Mann Aff. ¶ 5. To the extent Justice sues Elkins and Mann in their official capacities, "Gene Cella is the registered agent for service of process for the Office of Administrative Hearings...." Elkins Aff. ¶ 7; Mann Aff. ¶ 7; Cella Aff. ¶ 2. Justice has "never... served [Cella] with a copy of the summons, either the unissued summons form or an issued summons, or the complaint in this matter." Cella Aff. ¶ 8.

Justice blames any errors in service in part on a "failure of the Clerk to stamp, sign and issue a docket number" and the ALJ defendants' refusal to waive service. Resp. Opp'n ALJ Defts.' Mot. Dismiss [D.E. 46] 2. Justice also notes that he has attempted in good faith to correct any service error, and has submitted the affidavit of a non-party who states that she "caused to be placed three copies of summons and complaint addressed to the Attorney General's Office on September 9, 2013." Odom Aff. [D.E. 66-2] 1.

Justice has failed to prove proper service on the ALJ defendants. Justice may not personally attempt to serve defendants. See, e.g., Constien v. United States, 628 F.3d 1207, 1213–14 (10th Cir. 2010); Dougherty v. Snyder, No. 1:CV-10-1071, 2010 WL 3168323, at *1 (M.D. Pa. July 29, 2010) (unpublished); Price v. Hous. Auth. of New Orleans, No. CIV.A. 09-4257, 2010 WL 2836103, at *1 (E.D. La. July 16, 2010) (unpublished). Moreover, Justice's attempt to serve the ALJ defendants with a summons that the clerk of court had not issued was improper. See Mathies v. Silver, 266 F. App'x 138, 140 (3d Cir. 2008) (per curiam) (unpublished). To the extent Justice faults the clerk of

9

court for not immediately issuing summonses, Justice has not demonstrated any circumstance warranting overlooking the jurisdictional requirements of proper service of a court-issued summons. Accordingly, Justice has failed to prove that he satisfied Rule 4. Although proceeding pro se, Justice must comply with the Federal Rules of Civil Procedure. See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–52 (1984) (per curiam); Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013–14 (5th Cir. 1990) (per curiam). Moreover, although the court enjoys some discretion in enforcing Rule 4 when there is actual notice, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).

Rule 4(m) permits the court to extend the time for service when a plaintiff shows good cause for the failure to properly serve. "[C]ourts generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process." Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013) (unpublished); see Knotts v. Univ. of N.C. at Charlotte, No. 3:08-CV-478, 2011 WL 650493, at * 9 (W.D.N.C. Feb. 10, 2011) (unpublished). The court need not do so here, however, due to fundamental defects in the complaint and amended complaint. Therefore, the court denies as moot Justice's motions to resolve the issue of service [D.E. 64] and for extension of time to complete service [D.E. 71]. Justice's motion for costs associated with the ALJ defendants' refusal to waive service lacks merit and is denied. Cf. Moore v. Hosemann, 591 F.3d 741, 746–47 (5th Cir. 2009).

C.

Defendants seek dismissal of the complaint based on Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. Thus, the

10

court first addresses subject-matter jurisdiction.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co., 523 U.S. at 89 (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). Because Justice asserts that this court has subject-matter jurisdiction, he must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555–56; Coleman, 626 F.3d at 190; Giarratano, 521 F.3d at 302; Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, 591 F.3d at 255; see Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

First, the court addresses the ALJ defendants' argument that they are immune from suit for monetary damages. Mem. Supp. ALJ Defts.' Mot. Dismiss [D.E. 44] 6–8; Mem. Supp. ALJ Defts.' 2nd Mot. Dismiss [D.E. 58] 8–10. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ." Pierson, 386 U.S. at 553–54. "'[Q]uasi-judicial' agency officials whose duties

11

are comparable to those of judges or prosecutors" are likewise entitled to absolute immunity. Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir. 1999); see Cleavinger v. Saxner, 474 U.S. 193, 200 (1985) (extending immunity to "federal hearing examiner[s] and administrative law judge[s]"). Courts have specifically extended this doctrine to state administrative hearing officers who preside over IDEA administrative proceedings. See, e.g., Singletary v. Dep't of Health & Human Servs./NC Infant Toddler Program, 848 F. Supp. 2d 588, 593 (E.D.N.C. 2012), aff'd, 502 F. App'x 340 (4th Cir.) (per curiam) (unpublished), cert. denied, 133 S. Ct. 2881 (2013); B.J.S. v. State Educ. Dep't/Univ. of New York, 699 F. Supp. 2d 586, 594–95 (W.D.N.Y. 2010); M.O. v. Ind. Dep't of Educ., 635 F. Supp. 2d 847, 854 (N.D. Ind. 2009).

Justice attempts to avoid dismissal of the ALJ defendants by arguing that their "immunity does not extend to conspiracy under color of law." Resp. Opp'n All Defts.' Mots. Dismiss [D.E. 62] 6 (citing 42 U.S.C. § 1985(3)); see also Suppl. Resp. Opp'n All Defts.' Mots. Dismiss [D.E. 63] 4. Justice's argument fails. See, e.g., Dennis v. Sparks, 449 U.S. 24, 27 (1980); Mitchell v. McBryde, 944 F.2d 229, 230 (5th Cir. 1991); Dykes v. Hosemann, 776 F.2d 942, 946 (11th Cir. 1985) (en banc) (per curiam). Thus, the court dismisses Justice's claims for monetary damages against the ALJ defendants.

Next, the court addresses defendants' argument that Justice's claims pursuant to the IDEA and Section 504 must be dismissed for failure to exhaust administrative remedies, or alternatively as time-barred. See Mem. Supp. ALJ Defts.' Mot. Dismiss [D.E. 44] 9–12; Mem. Supp. Sch. Defts.' Mot. Dismiss [D.E. 51] 8–11; Mem. Supp. ALJ Defts.' 2nd Mot. Dismiss [D.E. 58] 12–15. Absent certain "narrow exceptions" not present here, a parent who asserts violations of the IDEA must first exhaust state administrative remedies before filing suit in federal court. MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir. 2002); see 20 U.S.C. § 1415(l); McGraw v.

Bd. of Educ. of Montgomery Cnty., 952 F. Supp. 248, 254–55 (D. Md. 1997). "The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004); see Ellenberg v. N.M. Military Inst., 478 F.3d 1262, 1267 (10th Cir. 2007); M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006). Justice's "unilateral decision . . . to remove [his child] from the District's schools does not excuse [his] failure to exhaust . . . administrative remedies." MM, 303 F.3d at 536 n.16. In North Carolina, a parent wishing to exhaust state administrative remedies must first file a petition with the OAH. Justice v. Granville Cnty. Bd. of Educ., No. 5:10-CV-350-BR, 2010 WL 4668791, at *2 (E.D.N.C. Sept. 2, 2010) (unpublished) (citing N.C. Gen. Stat. § 115C-109.6(a)), report and recommendation adopted, 2010 WL 4668774 (E.D.N.C. Oct. 19, 2010) (unpublished); see E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ., No. 1:12CV29, 2013 WL 5461830, at *3 (M.D.N.C. Sept. 30, 2013). If he is "aggrieved by the findings and decision" at the OAH level, he then has thirty days to "fil[e] a written notice of appeal with the person designated by the State Board of Education." Justice, 2010 WL 4668791, at *2 (quotations omitted ) (citing N.C. Gen. Stat. §§ 115C–109.9(a), 115C–107.2); see E.L., 2013 WL 5461830, at *3. The State Board of Education then appoints a State Review Officer ("SRO") to conduct an impartial review of the decision, and "[t]he SRO's decision is final unless an aggrieved party timely files a civil action pursuant to 20 U.S.C. § 1415(i)(2)(A)." E.L., 2013 WL 5461830, at *3; see Justice, 2010 WL 4668791, at *2.

Justice failed to exhaust administrative remedies before filing suit. To the extent Justice asserts that defendants "prohibited Plaintiff from pursuing a hearing by trickery, fraud[,] and deceit," Resp. Opp'n All Defts.' Mots. Dismiss [D.E. 62] 4, or that he "was prevented from filing a due process complaint due to specific misrepresentations by the Defendants coercion during a mediation

13

hearing that Defendants at the rescheduled meeting on July 2, 2012," Suppl. Resp. Opp'n All Defts.' Mots. Dismiss [D.E. 63] 10, Justice's argument fails. Cf. D.K. v. Abington Sch. Dist., 696 F.3d 233, 245–46 (3d Cir. 2012); Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 775 (1st Cir. 1981) (Breyer, J.); R.S. v. Bedford Cent. Sch. Dist., 899 F. Supp. 2d 285, 289–90 (S.D.N.Y. 2012); Starkey ex rel. Starkey v. Somers Cent. Sch. Dist., 319 F. Supp. 2d 410, 418 (S.D.N.Y. 2004). Thus, the court dismisses Justice's claims seeking relief under the IDEA and Section 504. The court further notes that Justice cannot hold any defendant liable in his or her individual capacity under either Section 504 or the IDEA. "[T]hese statutes do not create individual liability." J.W. v. Johnston Cnty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012) (unpublished) (collecting cases). Accordingly, the court dismisses any Section 504 or IDEA claims to the extent the claims purport to seek relief from any defendant in his or her individual capacity. Likewise, Justice may not recover compensatory or punitive damages for any violation of the IDEA. Sellers by Sellers v. Sch. Bd. of City of Mannassas, 141 F.3d 524, 527 (4th Cir. 1998). Thus, the court dismisses any such claim.

Next, the court analyzes Justice's conspiracy claim. To state a claim of civil conspiracy pursuant to 42 U.S.C. § 1985(3), Justice must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy that resulted in [the] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore fail to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Justice fails to plausibly allege a "meeting of the minds" between any of the named defendants to violate his constitutional rights. Cf. Iqbal, 556 U.S. at 678–79. Thus, Justice fails to state a claim for civil conspiracy.

14

Next, the court analyzes Justice's section 1983 claims. Defendants assert that Justice has failed to adequately plead any section 1983 claim. Mem. Supp. Neale Mot. Dismiss [D.E. 38] 3–4; Mem. Supp. Watson Mot. Dismiss [D.E. 40] 5; Mem. Supp. Sch. Defts.' Mot. Dismiss [D.E. 51] 12–15. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Filarsky v. Delia, 132 S. Ct. 1657, 1661–62 (2012); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Negligence claims largely are not actionable under section 1983. See, e.g., Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995). Moreover, section 1983 does not impose liability for violations of duties of care arising under state law. See, e.g., DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201–02 (1989).

To the extent Justice attempts to premise any section 1983 claim on a purported violation of the IDEA or Section 504, he may not do so. Sellers, 141 F.3d at 525, 529–32; see K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist., No. 12-15483, 2013 WL 6698072, at *10 (11th Cir. Dec. 20, 2013); A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803–05 (3d Cir. 2007) (en banc). Thus, the court dismisses any section 1983 claim which relies on a violation of these statutes. To the extent Justice asserts that any of the acts he complains of were discriminatory in nature, the Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and

that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Justice has not plausibly stated that he was treated differently from any person with whom he is similarly situated. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. See, e.g., Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Coleman, 626 F.3d at 190. Justice has not made plausible allegations to support any equal protection claim. See, e.g., Coleman, 626 F.3d at 190–91. Thus, Justice has failed to state a claim upon which relief may be granted, and this claim is dismissed. To the extent Justice asserts defendants denied him due process, Justice has failed to identify some "right at issue conferred by the Constitution or other federal laws and not by the IDEA." K.A., 2013 WL 6698072, at *10; see Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 194–96 (3d Cir. 2009).

III.

In sum, the court DENIES plaintiff's motions to resolve the issue of service [D.E. 64], for extension of time to complete service [D.E. 71], for costs [D.E. 65], and for entry of default [D.E. 76]. The court GRANTS plaintiff's motion to amend [D.E. 49], and DISMISSES plaintiff's claims against defendant Richards and DISMISSES Richards as a defendant. The court GRANTS defendants' motions to dismiss [D.E. 37, 39, 43, 50, 52, 54, 57, 60], DENIES AS MOOT defendants' motions to stay discovery [D.E. 74, 77], and DISMISSES the complaint and amended complaint.

SO ORDERED. This 20 day of January 2014.

/s/ James C. Dever
JAMES C. DEVER III
Chief United States District Judge